IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BRANDON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1335 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA'S MEGAN'S LAW, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                       September 14, 2020

In 2009, the *pro se* plaintiff pleaded guilty to various charges, including possessing and disseminating child pornography. As part of his sentence, the state trial court required the plaintiff to register as a sex offender for ten years. In 2019, after the state court determined that the plaintiff had violated his probation, the court placed the plaintiff on the sex offender registry for an additional ten years.

The plaintiff brings the instant action under 42 U.S.C. § 1983 against Pennsylvania's Megan's Law.[1] He claims that the state court's placement of him on the sexual offender registry for an additional ten years violates his rights under the Double Jeopardy Clause. He has also sought leave to proceed *in forma pauperis*.

As discussed further below, although the court will grant the plaintiff leave to proceed *in forma pauperis* in this action, the court must dismiss the complaint for the failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). The court will dismiss the complaint with prejudice and not provide the plaintiff with leave to amend because doing so would be futile.

---

[1] "Pennsylvania's Megan's Law requires all convicted sex offenders to register with state and local police, and subjects certain offenders to community notification." *Doe v. Pa. Bd. of Prob. and Parole*, 513 F.3d 95, 98 (3d Cir. 2008).

I.        ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, David Brandon ("Brandon"), filed an application for leave to proceed *in forma pauperis* and a complaint that the clerk of court docketed on March 6, 2020. Doc. Nos. 1, 2. In the complaint, Brandon alleges that after he pleaded guilty in October 2009 to charges including possession of child pornography, dissemination of child pornography, and illegal use of a communication facility, the state court "placed [him] on Megans [sic] Law for 10 [years]."[2] Compl. at 3, Doc. No. 2. Brandon apparently violated the conditions of his probation on "November 1, 2020," and the state court directed that he be placed on the sexual offender registry for an additional ten years "for the exact same reason [he has] already serve[d] 10 [years]." *Id.*

---

[2] The court may consider matters of public record when conducting the screening of the instant complaint under 28 U.S.C. § 1915. *See Castro-Mota v. Smithson*, Civ. A. No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Per the publicly available state court records, it appears that the Delaware County Criminal Investigations Division charged Brandon with 652 total counts of possession of child pornography in violation of 18 Pa. C.S. § 6312(d)(1) and illegal use of communications facility in violation of 18 Pa. C.S. § 7512(a). *See* Docket, *Commonwealth v. Brandon*, No. CP-23-CR-8097-2008 (Del. Cnty. Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-23-CR-0008097-2008&dnh=bkoD7%2b%2fCg2dY5EvfPsfqKw%3d%3d (last visited Sept. 11, 2020) ("Docket"). On September 10, 2009, Brandon pleaded guilty to 50 counts of possession of child pornography and one count of illegal use of communication facility in the Court of Common Pleas of Delaware County. *See id.* The Commonwealth nolle prossed the remaining charges. *See id.* The trial court sentenced him to a minimum of six months to a maximum of 23 months' incarceration, to be followed by an aggregate period of eight years' probation. *See id.* The trial court also required the plaintiff to register as a sex offender. *See id.*

Although a bit confusing insofar that the docket reflects that this occurred after a *Gagnon I* hearing, it also appears that the state court determined that Brandon violated the conditions of his probation and resentenced him on September 18, 2018, to a period of time served to a maximum of 12 months' incarceration to be followed by two years' probation. *See id.*; *see also Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000) (explaining that (1) a *Gagnon I* hearing is "a pre-revocation hearing," in which the court determines whether "probable cause exists to believe that a violation has been committed," and (2) if the court finds probable cause, then "a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made"). It further appears that the state court had a *Gagnon II* hearing after which the court later resentenced Brandon on October 9, 2019. *See* Docket.

Brandon appealed from the October 9, 2019 judgment of sentence (and a subsequent denial of a motion for reconsideration of sentence on December 20, 2019) to the Superior Court of Pennsylvania, and it appears that the Superior Court quashed this appeal on April 9, 2020 because the plaintiff untimely filed it. *See id.*; Docket, *Commonwealth    v.    Brandon*,    No.    283    EDA    2020    (Pa.    Super.),    *available    at*: https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=283+EDA+2020&dnh=gPguVXAeCSqf7mYtmaFJMw%3d%3d (last visited Sept. 11, 2020). Brandon then filed a petition for post-conviction collateral relief that was docketed on April 24, 2020. *See* Docket. The state court appointed counsel on Brandon's behalf. *See id.* The petition remains pending in the Court of Common Pleas. *See id.*

Brandon claims that this additional ten-year placement on the sex offender registry violates his rights under the Double Jeopardy Clause of the Fifth Amendment. *Id.* He asserts that his "image and information should not be on [the Megan's Law] site any longer" because he has "served the 10 [years] initially required and sentenced" and "now [he] believe[s] this violates my right to privacy." *Id.* He seeks an award of $1,500 per day for any additional day that his name and likeness appear on the Megan's Law database beyond the ten years he "originally served." *Id.* at 4.

On March 12, 2020, the court entered an order denying the Brandon's *in forma pauperis* application without prejudice because he did not file a certified copy of his prisoner account statement showing a balance and all activity in his account over the six months prior to filing this action. *See* Doc. No. 4. The court provided Brandon with 30 days to either submit the account statement or pay the $350 filing fee and $50 administrative fee. *See id.*

The court did not receive either the $400 fee or the prisoner account statement within 30 days. Nonetheless, due to changes in court operations due to COVID-19 (including the fact that the clerk's office could not process incoming mail for multiple months), the court entered another order on August 3, 2020, directing the clerk of court to resend the court's March 12, 2020 order to Brandon.[3]

On August 17, 2020, the clerk of court docketed another application for leave to proceed *in forma pauperis* (the "IFP Application") and a prisoner trust fund account statement. *See* Doc. Nos. 6, 7. It appears that Brandon mailed these documents to the clerk of court in early April, yet they were not docketed until August 17, 2020, due to the disruption in court operations caused by COVID-19. *See* Doc. No. 7 at ECF p. 3 (showing time stamp of April 7, 2020).

---

[3] The court entered the March 12, 2020 order prior to any changes in court operations caused by COVID-19. The clerk's office mailed the order to Brandon on the same date it docketed the order. There is no indication that Brandon did not timely receive the court's order, although it is also possible that he did not timely receive a copy of the order due to changes in the operation of the Department of Corrections due to COVID-19.

3

## II.     DISCUSSION

### A.     The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Brandon is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[4]

### B.    Standard of Review

Because the court has granted Brandon leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard

---

[4] Because Brandon is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

5

used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C.     Analysis

Brandon's section 1983 claim in this case lacks plausibility for multiple reasons. First, he has failed to name an actual defendant insofar as "Pennsylvania's Megan's Law" is not a person or entity subject to suit. Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

6

United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). As Brandon has not sued a "person," his section 1983 claim cannot proceed.

Second, even if Brandon had named an appropriate state actor who allegedly caused him harm, his placement on the sex offender registry for an additional ten years following the revocation of his probation and resentencing would not constitute a double jeopardy violation. The Double Jeopardy Clause prohibits, *inter alia*, "a second prosecution for the same offense after conviction . . . and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989). The requirement to register as a sex offender following a sex crime conviction has uniformly been held not to impose "punishment" for double jeopardy purposes. *See Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (holding that New Jersey's registration provisions of Megan's Law does not impose "punishment" for purposes of double jeopardy and Ex Post Facto clauses); *Steward v. Folz*, 190 F. App'x 476 (7th Cir. 2006) (concluding Indiana's mandatory registration law did not constitute criminal punishment in violation of double jeopardy); *Johnson v. Terhune*, 184 F. App'x 622 (9th Cir. 2006) (determining that California law requiring prisoner to register as sex offender did not violate Ex Post Facto or Double Jeopardy Clauses (citing *Kansas v. Hendricks*, 521 U.S. 346, 368–69 (1997))); *Cutshall v. Sundquist*, 193 F.3d 466, 474–76 (6th Cir. 1999) (holding that Tennessee sex offender registry law does not violate prohibition against double jeopardy since state law imposes no affirmative disability or restraint, and its purpose and remedial and regulatory rather than punitive). Moreover, it appears from the face of the complaint that the additional registration requirement was not imposed for the original offenses, but rather as a consequence of the probation violation determination. Accordingly, the imposition of additional registration requirements following the probation violation does not trigger double jeopardy concerns. *See United States v. DiFrancesco*,

7

449 U.S. 117, 137 (1980) ("[T]here is no double jeopardy protection against revocation of probation and the imposition of punishment."); *Richardson v. Lackawanna Cnty.*, Civ. A. No. 3:CV-11-407, 2012 WL 5727303, at *5 (M.D. Pa. Nov. 15, 2012) ("It is well-settled that the revocation of parole or probation and the corresponding imposition of confinement does not violate the Double Jeopardy Clause because 'these criminal sanctions do not involve the increase of a final sentence, and ... defendant is aware at the original sentencing that a term of imprisonment later may be imposed.'" (quoting *Ralston v. Robinson*, 454 U.S. 201, 220 n.14 (1981))).

## III. CONCLUSION

For the reasons set forth above, Brandon has failed to state a plausible claim for relief and the court will dismiss the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).[5] The court will dismiss the complaint with prejudice and will not grant Brandon leave to amend because doing so would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (explaining that "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile").

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[5] It does not appear from the complaint that Brandon is contesting that he violated the conditions of his probation. The court notes that Brandon could not assert a claim that he was unconstitutionally determined to have violated his probation and, by extension, unconstitutionally subjected to the requirements of Megan's Law, [because] success on [such a] claim[] would necessarily imply the invalidity of his conviction[], which ha[s] never been reversed, vacated, or otherwise invalidated." *Hart v. Oberlander*, Civ. A. No. 20-CV-3533, 2020 WL 4815815, at *4 (E.D. Pa. Aug. 19, 2020) (citing *Johnson v. Davis*, Civ. A. No. 98-4380, 1999 WL 58643, at *2 (E.D. Pa. Jan. 28, 1999)); *see Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (concluding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment," plaintiff asserting section 1983 claim must prove that conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

8